UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

DIANE TRUDDLE, KAYLYN TRUDDLE,                                                PLAINTIFFS
RICKY CARMICHAEL, and RICKY CARMICHAEL, JR.,
all individually and as wrongful death beneficiaries
of Eric Carmichael, deceased and on behalf of
the Estate of Eric Carmichael, deceased

v.                                                    CIVIL ACTION NO. 2:11-CV-00207-GHD-SAA

WYETH, LLC; SCHWARZ PHARMA, INC.;
ALAVEN PHARMACEUTICALS, LLC;
GENERICS BIDCO I, LLC, doing business as
Qualitest Pharmaceuticals;
QUALITEST PHARMACEUTICALS, INC.;
and VINTAGE PHARMACEUTICALS, LLC                                               DEFENDANTS

MEMORANDUM OPINION

In this products liability case, Defendants Generics Bidco I, LLC; Qualitest Pharmaceuticals, Inc.; and Vintage Pharmaceuticals, LLC have filed a motion to dismiss [16]. These Defendants argue that in light of *PLIVA, Inc. v. Mensing*, —— U.S. ——, 131 S. Ct. 2567, 180 L. Ed. 2d 580 (2011), the Plaintiffs' amended complaint [4] should be dismissed pursuant to Rules 8, 9, and 12 of the Federal Rules of Civil Procedure. Upon due consideration of the motion and corresponding memorandum, response, and related authorities, the Court finds that the motion should be granted.

*A. Factual and Procedural Background*

The Plaintiffs allege in their amended complaint that the decedent, nineteen-year-old Eric Carmichael ("Mr. Carmichael"), suffered from akathisia, a condition characterized by uncontrollable motor restlessness, which led to his suicide. The Plaintiffs allege that Mr.

1

Carmichael's condition and suicide were caused by Reglan/metoclopramide/metoclopramide HCI, a medication he was prescribed. The Plaintiffs filed suit against both brand-name and generic manufacturers of the drug asserting negligence, strict liability, breach of warranties, misrepresentation and fraud, and negligence *per se* based on the Defendants' alleged failure to warn of the risks of their products. The Plaintiffs allege the following facts in support of their claims: On June 9, 2008, Mr. Carmichael was admitted to the hospital with complaints of chest pain and gastritis. He was diagnosed with a gastric ulcer, gastritis, and esophagitis. His doctor prescribed Reglan/metoclopramide, relying on the information he had about the drug. Although Mr. Carmichael took the drug as directed and prescribed, Mr. Carmichael began suffering from side effects ranging from hallucinations, extreme restlessness (akathisia), feelings of craziness, and suicidal desires. On June 19, 2008, Mr. Carmichael secretly obtained a hand-gun and went to his room at his mother's house, purportedly to take a nap. His mother tried to get in touch with someone who could refer her son to a psychiatrist. Meanwhile, Mr. Carmichael moved a bookcase to block the door, sent a text to a friend stating that he was "now resting in peace," and took his own life with a self-inflicted gunshot wound to the right temple.

The Plaintiffs initially brought this action in the Circuit Court of Desoto County with the assistance of counsel. Subsequently, the Plaintiffs' counsel filed a motion to withdraw, which was granted in state court. The case was then removed to this Court. The Plaintiffs are proceeding *pro se*. Defendants Generics Bidco I, LLC; Qualitest Pharmaceuticals, Inc.; and Vintage Pharmaceuticals, LLC (the "Generic Defendants") have filed a motion to dismiss the Plaintiffs' claims against them on the basis that the claims are preempted by *Mensing*, which was decided by the United States Supreme Court on June 23, 2011. The Plaintiffs have now filed a

2

response to the motion, the Generic Defendants have submitted supplemental authorities in support of the motion, and the matter is now ripe for review.

*B. Motion to Dismiss Standard*

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Reyna v. Donley*, No. 11–50706, 2012 WL 2376952, at *1 (5th Cir. June 22, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quotations omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Robinson v. Coca-Cola Co.*, No. 11–30130, 2012 WL 1859513, at *2 (5th Cir. May 22, 2012) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205). The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. *Lone Star Fund*, 594 F.3d at 387 (citing *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949).

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (quoting FED. R. CIV. P. 8(a)(2)). Although the court must accept all allegations in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

3

suffice." *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–1950 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

The Plaintiffs' fraud and misrepresentation claims are subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to plead "the circumstances constituting fraud . . . with particularity." FED. R. CIV. P. 9(b).

### C. Analysis

The United States Food and Drug Administration (the "FDA") exclusively regulates the labeling of both brand-name drugs and generic drugs. *See* 21 C.F.R. § 314.50(c)(2)(i) (brand-name drugs); 21 C.F.R. § 314.94(a)(8) (generic drugs). The FDA's definition of labeling encompasses any communication with medical professionals concerning a drug:

> Brochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, film strips, lantern slides, sound recordings, exhibits, literature, and reprints and similar pieces of printed, audio, or visual matter descriptive of a drug and references published (for example, the "Physicians Desk Reference") for use by medical practitioners, pharmacists, or nurses, containing drug information supplied by the manufacturer, packer, or distributor of the drug and which are disseminated by or on behalf of its manufacturer, packer, or distributor are hereby determined to be labeling as defined in section 201(m) of the act.

21 C.F.R. § 202.1(l)(2).

The Generic Defendants contend that all claims against them are predicated on their alleged failure to warn of the dangerous side effects of the drug, and that "[a]ny claims based on

4

state-law duties that Generic Defendants could not have fulfilled without the federal government's permission and assistance are preempted." Generic Defs.' Mem. Law Supp. Mot. Dismiss [17] at 2. The Generic Defendants anticipate that the Plaintiffs would argue that the Generic Defendants should have used an additional means of communicating warnings to physicians, such as letters to health care providers, and suspended sales of the drug until the branded labels were changed. The Generic Defendants additionally anticipate that the Plaintiffs would try to assert design defect or other legal theories to escape the preemptive reach of *Mensing*. The mother of Mr. Carmichael, Plaintiff Ms. Diane Truddle, has submitted a response to the motion to dismiss, asserting that she has a pending medical malpractice action against Baptist Hospital, as well as this action against the drug manufacturers. She further explains the facts and circumstances which led to the filing of this action against the manufacturers of the drug that was prescribed to her son. The Court looks to *Mensing* for guidance on whether the Plaintiffs' claims can be sustained, and finds that all of the Plaintiffs' claims against the Generic Defendants must be dismissed as a matter of law.

In *Mensing*, several plaintiffs had asserted state tort claims against drug manufacturers for their alleged failure to provide adequate warning labels for the same drug at issue in the case *sub judice*, generic metoclopramide. 131 S. Ct. 2567, 2573–2574. The plaintiffs had pled fourteen different counts, including failure to warn, fraud/misrepresentation, failure to monitor/test, violation of a state consumer protection statute, strict products liability, and breach of implied warranties. *See* Compl., *Mensing v. Wyeth, Inc.*, 562 F. Supp. 2d 1056 (D. Minn. 2008) (No. 07-3919), at 27–49. The Court held that "federal drug regulations applicable to generic drug manufacturers directly conflict with, and thus preempt, these state-law claims," which were all predicated on a failure to warn theory. *Mensing*, 131 S. Ct. 2567, 2572. The

Court concluded that the state law in question imposed labeling requirements on drug manufacturers, but "[f]ederal law imposes far more complex drug labeling requirements." *Id.* at 2574. The Court held that because federal law requires generic drug manufacturers to use drug warning labels identical to those used for the brand-name drug under the Hatch–Waxman Amendments to the Federal Food, Drug, and Cosmetic Act (the "FDCA"), and because such warnings could not be changed without FDA approval, state tort claims against the generic manufacturers for failure to provide an adequate warning label are preempted by federal law. *Id.* The Court stated:

> If the [m]anufacturers had independently changed their labels to satisfy their state-law duty, they would have violated federal law. Taking [the plaintiffs'] allegations as true, state law imposed on the [m]anufacturers a duty to attach a safer label to their generic metoclopramide. Federal law, however, demanded that generic drug labels be the same at all times as the corresponding brand-name drug labels. . . . Thus, it was impossible for the [m]anufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same.

*Id.* at 2578.

The Court is of the opinion that in the case *sub judice*, the Plaintiffs' claims, which are predicated on a failure-to-warn state tort claim, are preempted by federal law under *Mensing*.[1] Although the Plaintiffs assert several theories of recovery against the Generic Defendants, all theories stem from the Generic Defendants' alleged failure to warn of the side effects of the drug—a claim arising from Mississippi products liability law. Thus, all theories will be analyzed

---

[1] The Court could not find a district court case holding to the contrary. *See, e.g., Del Valle v. Qualitest Pharms. Inc.*, No. B-11-113, 2012 WL 2899406 (S.D. Tex. June 22, 2012); *Johnson v. TEVA Pharms. USA, Inc.*, No. 2:10-CV-404, 2012 WL 1866839 (W.D. La. May 21, 2012); *Eckhardt v. Qualitest Pharms. Inc.*, No. M-11-235, 2012 WL 1511817 (S.D. Tex. Apr. 30, 2012); *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289 (M.D. Fla. 2011); *Del Valle v. PLIVA, Inc.*, No. B:11-113, 2011 WL 7168620 (S.D. Tex. Dec. 21, 2011); *Whitener v. PLIVA, Inc.*, No. 10-1552, 2011 WL 6056546 (E.D. La. Dec. 6, 2011); *Gross v. Pfizer, Inc.*, No. 10-CV-00110-AW, 2011 WL 5865267 (D. Md. Nov. 22, 2011); *Waguespack v. Plivia USA, Inc.*, No. 10-692, 2011 WL 5826015 (E.D. La. Nov. 3, 2011); *Metz v. Wyeth, LLC*, No. 8:10-CV-2658-T-27AEP, 2011 WL 5024448 (M.D. Fla. Oct. 20, 2011); *Morris v. Wyeth, Inc.*, No. 3:09-CV-854, 2011 WL 4973839 (W.D. La. Oct. 19, 2011); *Guilbeau v. Wyeth Inc.*, No. 09-1652, 2011 WL 4948996 (W.D. La. Oct. 14, 2011).

together under the umbrella of a failure to warn claim under Mississippi law. *See Swayze v. McNeil Labs., Inc.*, 807 F.2d 464 (5th Cir. 1987). The Plaintiffs in the instant case assert that the Generic Defendants knew or should have known, through the exercise of reasonable care, that the package insert for Reglan/metoclopramide substantially understated the frequency of side effects with ingesting the drug, but instead marketed, manufactured, and/or distributed the drug and encouraged its use, misrepresenting its effectiveness, and concealing its dangerous side effects. The Plaintiffs additionally allege that the Generic Defendants failed to investigate the accuracy of their labels and failed to review the medical literature for the drug. The Plaintiffs maintain that the Generic Defendants failed to provide accurate and adequate warnings to the medical community, Mr. Carmichael, and other foreseeable users of the drug regarding the frequency of side effects with its use.[2] As *Mensing* provides, all such claims are preempted by federal law, as the FDA exclusively regulates the labeling of brand-name and generic prescription drugs. To the extent any investigation, testing, or marketing surveillance would have revealed the dangers of the drug, that knowledge would have been helpful only to the extent it was communicated through labeling—which would not have made any difference as long as the Generic Defendants were following the FDA's labeling regulations. The Generic Defendants could not have unilaterally improved the labeling of the drug any further even if they had wanted to. Thus, the Court holds that all of the Plaintiffs' claims against the Generic Defendants are

---

[2] The Court notes that under Mississippi law, which follows the "learned intermediary" doctrine, "a manufacturer of a prescription drug has no duty to warn the end user of the drug's possible adverse effects. The manufacturer's duty to warn runs only to the prescribing physician, who acts as an intermediary between the manufacturer and the patient." *See Smith v. Johnson & Johnson, Inc.*, No. 11–60624, 2012 WL 3139566, at *4 (5th Cir. Aug. 2, 2012) (citing *Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688 (Miss. 1988)). And "[i]n order to make out a case for failure to warn under the learned intermediary doctrine, the plaintiff must establish that the treating physician, or a reasonable physician in the treating physician's position, would not have used the product had he received an adequate warning." *Id.* (citing *Thomas v. Hoffman–LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992)). Thus, the Plaintiffs' failure to warn claim is limited under Mississippi law to the Defendants' alleged failure to warn the treating physician, or "learned intermediary," of the drug's dangerous side effects.

preempted under federal law. However, for the sake of thoroughness, the Court provides the following discussion of the Plaintiffs' misrepresentation and fraud count, particularly to the portion asserting a fraud-on-the-FDA theory.

*Mensing* provides that federal law preempts state tort claims for failure to warn against manufacturers of generic drugs, and this preemption encompasses a theory of recovery on misrepresentation and fraud. However, the Court feels that the portion of the misrepresentation and fraud theory asserting fraud on the FDA deserves careful scrutiny. The Plaintiffs allege, *inter alia*, that the Generic Defendants "misrepresented to the FDA, [Mr. Carmichael], and the health care industry the safety and effectiveness of Reglan/metoclopramide and/or fraudulently, intentionally[,] and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Reglan/metoclopramide." *See* Pls.' Am. Compl. [4] ¶ 127.

In 2001, United States Supreme Court held that state tort claims concerning misrepresentations made to the FDA to obtain approval of a medical device were preempted by the FDCA, 52 Stat. 1040, as amended by the Medical Device Amendments of 1976 (the "MDA"), 90 Stat. 539, 21 U.S.C. § 301 (1994 ed. &. Supp. V). *See Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 344, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001). The *Buckman* plaintiffs had alleged that the drug manufacturers made fraudulent representations to the FDA in the course of obtaining approval to market orthopedic bone screws, and as a result, the devices were approved, and then used to the plaintiffs' detriment; the plaintiffs sought damages under state tort law. *Id.* at 344, 121 S. Ct. 1012. The Court found that such claims are preempted by federal law and reasoned that

> [p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied,' . . . such as to warrant a

> presumption against finding federal preemption of a state-law cause of action. To the contrary, the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law.

*Id.* at 347, 121 S. Ct. 1012 (quoting *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947)). The Court found that the FDA is well able to punish and deter fraud against itself based on the statutory provisions "aimed at detecting deterring, and punishing false statements made during . . . approval processes." *Id.* at 349, 121 S. Ct. 1012. The Court also cautioned that the balance of statutory objectives can be skewed by allowing fraud-on-the-FDA claims under state tort law, which would "inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." *Id.* at 348–50, 121 S. Ct. 1012. However, the Court envisioned a state tort claim that would resemble a fraud-on-the-FDA claim and yet possibly escape preemption: a common-law negligence claim brought against a drug manufacturer that would parallel federal safety requirements claims, but rely on traditional state tort law. *Id.* at 352–53, 121 S. Ct. 1012. Such a claim might escape preemption because it would "[arise] from the manufacturer's failure to reasonable care in the production of the product, not solely from the violation of FDCA requirements." *See id.*, 121 S. Ct. 1012.

In *Hughes v. Boston Scientific Corp.*, 631 F.3d 762 (5th Cir. 2011), the Fifth Circuit explained that a state tort claim for negligence that attempted to prove breach of a state law duty by asserting a violation of FDA regulations was not a fraud-on-the-FDA claim that would be preempted under *Buckman*. In *Hughes*, the plaintiff sought recovery for injuries allegedly caused by a medical device; the plaintiff had asserted state tort claims on theories of products liability, breach of warranty, negligence, breach of implied warranty of merchantability, and of fitness for a particular purpose. 631 F.3d at 765. The Court found that all theories were

9

predicated on a failure to warn claim and preempted under federal law except the plaintiff's negligence theory, which was predicated on the manufacturer's failure to comply with the applicable federal statutes and regulations. *Id.* at 764. The negligence count charged, *inter alia*, that Boston Scientific "manufactured and distributed the product inconsistently with its FDA PMA approval by failing to report serious injuries and malfunctions of the device as defined in the MDR regulations." *Id.* at 765 (internal quotation marks omitted). The Fifth Circuit distinguished this language from a fraud-on-the-FDA theory that would be preempted under *Buckman*:

> The plaintiffs in *Buckman* were attempting to assert a freestanding federal cause of action based on violation of the FDA's regulations; the plaintiffs did not assert violation of a state tort duty. In contrast, Hughes is asserting a Mississippi tort claim based on the underlying state duty to warn about the dangers or risks of product. She seeks to prove Boston Scientific's breach of the state duty by showing that Boston Scientific violated the FDA's MDR regulations. . . . Hughes is asserting a recognized state tort claim .
> . . .

*Id.* at 775. The Fifth Circuit held that the plaintiff's "failure to warn claim is neither expressly nor impliedly preempted by the MDA to the extent that this claim is premised on [the manufacturer's] violation of FDA regulations with respect to reporting burns caused by the [device]." *Id.* at 776.

Following the *Mensing* decision, the Fifth Circuit held that fraud-on-the-FDA claims are preempted under federal law unless the FDA itself has found fraud. In *Lofton v. McNeil Consumer & Specialty Pharmaceuticals*, 672 F.3d 372 (5th Cir. 2012), the Fifth Circuit was confronted with a similar set of facts as in the case *sub judice*—a man had died from Toxic Epidermal Necrolysis after ingesting Motrin, and his wife and children sued the drug's manufacturer, asserting that Motrin had caused the man's disease and that the manufacturer had

failed to warn consumers of the risk of such severe autoimmune reactions to the drug. 672 F.3d at 373. Specifically, the plaintiffs asserted common law negligence and strict products liability claims under Texas law stemming from the defendants' alleged failure to warn. *Id.* at 374. Under Texas law, failure to warn claims are subject to a fraud-on-the-FDA proof requirement. *Id.* Texas products liability law is similar to Mississippi products liability law in that a drug manufacturer "enjoys a rebuttable presumption that it is not liable for failure to warn if the FDA has approved 'the warnings or information' accompanying the product alleged to have harmed the plaintiff." *See id.* (quoting TEX. CIV. PRAC. & REM. CODE § 82.007(a)(1)). Texas law is specific that such a presumption can be rebutted by "establishing that . . . the defendant . . . withheld from or misrepresented to the [FDA] required information that was material and relevant to the performance of the product and was causally related to the claimant's injury." TEX. CIV. PRAC. & REM. CODE § 82.007(b)(1). The Northern District of Texas held that "extending the holding of *Buckman* to fraud-on-the-FDA exceptions is warranted" and that the fraud-on-the-FDA exception under Texas law was preempted, as "[p]laintiffs ask the court to reach the conclusion opposite of that reached by the FDA [in reviewing a citizen petition], that [d]efendants did not withhold information or mislead it." *Lofton*, 672 F.3d at 375 (quoting *Lofton*, 682 F. Supp. 2d 662, 675 (N.D. Tex. 2010)). Upon *de novo* review, the Fifth Circuit noted a circuit split on the issue. *Id.* (citing *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 361 (6th Cir. 2004) (finding Michigan statute similar to the Texas statute sometimes preempted); *Desiano v. Warner–Lambert & Co.*, 467 F.3d 85 (2d Cir. 2006), *aff'd by an equally divided court sub nom. Warner–Lambert Co., LLC v. Kent*, 552 U.S. 440, 128 S. Ct. 1168, 170 L. Ed. 2d 51 (2008) (finding same Michigan statute similar to the Texas statute not preempted)). The Fifth Circuit looked to *Buckman*, as well as *Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187, 173 L. Ed. 2d 51

11

(2009), for guidance. In *Wyeth*, the Court had held that "state common law failure to warn claims are not preempted by FDA approval of drug labels." *Id.* (citing *Wyeth*, 555 U.S. 555, 129 S. Ct. 1187). The Fifth Circuit found that the dispositive factor for federal preemption in *Buckman* was "common law state tort claims that parallel or reinforce the agency's efforts but do not involve the relationship between the federal regulator and the regulated entity," and upheld the Northern District of Texas's ruling that the fraud-on-the-FDA exception to Texas law was preempted by federal law. *Id.* at 377 (citing *Buckman*, 531 U.S. at 350, 121 S. Ct. 1012).[3]

Taking into account the preceding case law, this Court finds that the Plaintiffs' fraud-on-the-FDA theory of recovery is preempted under federal law. It is likely that the Plaintiffs' fraud-on-the-FDA theory would be preempted under *Buckman*, as the theory concerns the "inherently federal" relationship between the FDA and the Generic Defendants, which are entities regulated by the FDA. *See Buckman*, 531 U.S. at 344, 121 S. Ct. 1012. However, *Mensing* makes clear that fraud and misrepresentation theories predicated on a failure-to-warn state tort claim fail as a matter of law, because federal law preempts state laws that impose a duty upon generic drug manufacturers with respect to the labeling of such drugs.

## D. Conclusion

Plaintiff Ms. Truddle is understandably devastated at her son's death and states that she "was and still [is] very upset that anyone would give a child a medication on recall, and with a black [box] warning." *See* Pl.'s Resp. to Mot. Dismiss [61] at 1. She is a grieving mother and an intelligent individual with experience caring for nursing home residents with diseases ranging

---

[3] *Accord In re Aredia and Zometa Prods. Liab. Litig.*, 352 F. App'x 994 (6th Cir. 2009); *Garcia*, 385 F.3d at 965–66 (footnote and citation omitted); *Eckhardt*, 2012 WL 1511817; *Grange v. Mylan Labs., Inc.*, No. 1:07-CV-107 TC, 2008 WL 4813311, at *7 (D. Utah Oct. 31, 2008); *Zammit v. Shire US, Inc.*, 415 F. Supp. 2d 760, 768–69 (E.D. Mich. 2006); *Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1171–1175 (D. Ariz. 2005); *Henderson v. Merck & Co.*, No. 04-CV-05987-LDD, 2005 WL 2600220, at *11 (E.D. Pa. Oct. 11, 2005); *Duronio v. Merck & Co.*, No. 267003, 2006 WL 1628516, at *5 (Mich. App. June 13, 2006); *contra Desiano*, 467 F.3d 85, 98 (2d Cir. 2006), *aff'd by an equally divided court sub nom.* 552 U.S. 440, 128 S. Ct. 1168, 170 L. Ed. 2d 51 (2008).

from Parkinson's disease to tardive dyskinesia. The Court is very sympathetic and saddened by Ms. Truddle's set of circumstances, but is powerless to sustain the claims against the Generic Defendants. Those claims must be dismissed as a matter of law in light of United States Supreme Court precedent.

For the foregoing reasons, the Court finds that all claims asserted against Generics Bidco I, LLC; Qualitest Pharmaceuticals, Inc.; and Vintage Pharmaceuticals, LLC should be dismissed, as they fail to state a claim upon which relief may be granted. The Court notes that this ruling does not affect the Plaintiffs' claims asserted against the Branded Defendants; the Plaintiffs' claims against Wyeth, LLC; Schwarz Pharma, Inc.; and Alaven Pharmaceuticals, LLC remain viable.[4] *See Mensing*, 131 S. Ct. 2567, 2581.

A separate order in accordance with this opinion shall issue this day.

THIS, the 14th day of August, 2012.

/s/ 
SENIOR JUDGE

---

[4] This, of course, does not preclude the Court from considering the dismissal of the remaining claims, should the remaining Defendants choose to file a motion for summary judgment.

13